**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRUSOX LLC and JAMES PAUL CHERNESKI,

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

      Defendants.

Case No. 1:26-cv-04588

**COMPLAINT**

Jury Trial Demanded

Plaintiffs TRUSOX LLC ("TRUsox") and JAMES PAUL CHERNESKI, by and through undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations and foreign entities identified on Schedule A[1] to this Complaint (collectively, "Defendants"):

**INTRODUCTION**

1.  This action has been filed by TRUsox to combat online counterfeiters who trade on TRUsox's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' registered TRUSOX Trademarks, which are covered by U.S. Trademark Registration Nos. 4,930,490; 4,930,491; 6,221,531; and 6,811,803 (the "TRUSOX Trademarks"); and Plaintiffs' patent, which is covered by Patent No. D748,391 S (the "TRUSOX Patent," together with the TRUSOX Trademarks, the "TRUSOX Intellectual Property").

2.  The TRUSOX Intellectual Property are valid, subsisting, and in full force and

---

[1]  Plaintiffs are filing a motion to temporarily seal Schedule A simultaneously with the filing of this Complaint.

effect. True and correct copies of the federal trademark registrations certificates for the TRUSOX Trademarks are attached as **Exhibit 1**. A true and correct copy of the TRUSOX Patent is attached as **Exhibit 2**.

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and noncompliant products that embody marks identical or substantially identical to the TRUSOX Trademarks and/or the design(s) depicted in the TRUSOX Patent (the "Infringing Products"). By selling Infringing Products that purport to be genuine and authorized products using the TRUSOX Intellectual Property (the "TRUSOX Products"), Defendants cause confusion and deception in the marketplace.

4.      The Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Shein, Temu, and Walmart (collectively, the "Marketplace Platforms").

5.      Defendants design their online marketplace accounts to appear to be selling genuine products bearing, using, and/or embodying the TRUSOX Intellectual Property, while selling inferior imitations of such products.

6.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' infringement and counterfeiting of the

2

TRUSOX Intellectual Property, as well as to protect consumers from unknowingly purchasing Infringing Products.

8. As a result of Defendants' actions, Plaintiffs' have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill. Plaintiffs are further irreparably damaged from the loss of their lawful rights to exclude others from making, using, selling, offering for sale, and importing their patent. Plaintiffs, therefore, seek injunctive and monetary relief.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

13. This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or

controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

14.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

15.     In addition, because TRUsox sells genuine merchandise bearing, using, and/or embodying the TRUSOX Intellectual Property in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured TRUsox in this Judicial District through lost sales and customers. Defendants' actions have also harmed TRUsox by confusing and deceiving consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

16.     For example, Defendant Internet Stores accept orders for Infringing Products from and offer shipping to New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Infringing Products to be shipped to this Judicial District are attached as Exhibit 3 to the Declaration of James Paul Cherneski.

17.     Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York in this Judicial District, through accounts (the "User Account(s)") on

4

e-commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including New York and in this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products, and to place orders for, receive invoices for and purchase Infringing Products for delivery in the United States, including New York and in this Judicial District, as a means for establishing regular business with the United States, including New York and in this Judicial District.

18. Defendants have transacted business with consumers located in the United States, including New York and in this Judicial District, for the sale and shipment of Infringing Products.

19. Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of trademark infringement and/or patent infringement in this Judicial District and do substantial business in this Judicial District.

## THE PLAINTIFF

20. TRUsox is a domestic LLC organized under the laws of the State of Maryland with its principal place of business in Maryland. JAMES PAUL CHERNESKI is the owner of TRUsox.

21. TRUsox is the exclusive owners of the TRUSOX TRADEMARKS, as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,930,490 | | April 5, 2016 |
| 4,930,491 | | April 5, 2016 |
| 6,221,531 | | December 15, 2020 |
| 6,811,803 | TRUsox | August 9, 2022 |

22.    Plaintiffs are the exclusive owners of the TRUSOX Patent, which are as follows:

| Patent No. | Patent | Date of Patent |
|---|---|---|
| D748,391 S | SOCK WITH PATTERN OF SQUARES | Feb. 2, 2016 |

**THE DEFENDANTS**

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China.

24.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**THE TRUSOX PRODUCTS**

25.     TRUsox is an innovative U.S.-based sports apparel company that has built a strong reputation in the performance gear market since its founding in 2011. Focused on enhancing athletic performance, the company specializes in high-quality grip socks and complementary sportswear designed for stability, comfort, and control. TRUsox has achieved notable global reach and credibility. Its products are used by professional and amateur athletes worldwide, with adoption by a significant portion of elite soccer players in top-tier leagues. This level of adoption underscores the brand's performance credibility and influence within competitive sports.

26.     TRUsox is distinguishable in the industry due to its patented sock design (Patent No. D748,391 S) and proprietary technology. Its patented IN/EX Technology (Patent No. 9,498,003 B2), which features traction elements on both the inside and outside of the sock, helps prevent slippage between the foot, sock, and shoe, improving agility and power transfer during movement. This innovation has positioned the brand as a premium solution for athletes seeking measurable performance advantages.

27.     Since their introduction, the TRUSOX Products have been and are the subject of substantial and continuous marketing and promotion by Plaintiffs in the industry and to consumers. Plaintiffs' promotional efforts include the TRUsox website (https://tru.online), tradeshows such as ISPO and the United Soccer Coaches Convention, and marketing campaigns across the internet.

Further, Plaintiffs extensively promote the TRUSOX Products on social media such as Instagram (over 100,000 followers) and Facebook (over 17,000 followers). Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TRUSOX Products. As a result, the TRUSOX Products have become enormously popular, driven by Plaintiffs' arduous quality standards and innovative trademarked and patented designs. These designs are broadly recognized by consumers as being sourced from TRUsox. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from TRUsox and its TRUSOX Products.

28.     The TRUSOX Trademarks are distinctive and identify the TRUSOX Products as goods from TRUsox. The registrations for the TRUSOX Trademarks constitute *prima facie* evidence of their validity and of TRUsox's exclusive right to use those trademarks pursuant to 15 U.S.C. § 1057(b).

29.     From the date of the creation of the first TRUSOX Products to the present, TRUsox and its authorized retailers and distributors are and have been the sole official source of genuine TRUSOX Products in the United States.

30.     The TRUSOX Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125 (c)(1), and each has been continuously used and never abandoned.

31.     TRUsox owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the TRUSOX Trademarks as the owner of those trademarks.

32.     Plaintiffs are the exclusive owners of all right, title, and interest in and to the TRUSOX Patent, which was duly and legally issued by the United States Patent and Trademark Office.

33.     The TRUSOX Products in many instances embody at least a portion of the designs depicted in the TRUSOX Patent.

## THE DEFENDANTS' UNLAWFUL CONDUCT

34.     The success of the TRUSOX Products has resulted in significant counterfeiting. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

35.     Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizures statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *See* Declaration of Christopher Tom ("Tom Decl."), filed simultaneously with the filing of this Complaint, Ex. 2.

36.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TRUSOX Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet

Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

37.     Plaintiffs have not licensed or authorized Defendants to use the TRUSOX Intellectual Property. None of the Defendants are authorized retailers of the genuine TRUSOX Products.

38.     Defendants also deceive unknowing consumers by using without authorization the TRUSOX Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for TRUSOX Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine TRUSOX Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Infringing Products into this Judicial District.

39.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

40.     Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other

10

unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

41.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

42.    In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

43.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.[3] Rogue servers are notorious for ignoring take down demands sent by brand owners.

44.    Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited

---

[2]    *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enforcement (Dec. 11, 2019) https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited Apr. 23, 2026)

[3]    Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See 2023 Review of Notorious Markets for Counterfeiting and Piracy* (available online at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and _Piracy_Notorious_Markets_List_final.pdf).

2024 U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024, "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments." *See* Tom Decl. Ex. 2. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

45.     On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

46.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the TRUSOX Intellectual Property in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and New York over the Internet.

47.     Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District and, each Defendant has offered to sell counterfeit TRUSOX Products into the United States, including New York in this Judicial District.

48.     Defendants' use of the TRUSOX Intellectual Property in connection with the advertising, distribution, offering for sale, and sale of Infringing Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

49.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the TRUSOX Intellectual

Property, of the fame and incalculable goodwill associated therewith and of the popularity and success of the TRUSOX Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Infringing Products.

50.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the TRUSOX Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**[Against Defendants Designated in Schedule A to the Complaint]**

51.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–50 of this Complaint.

52.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered TRUSOX Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The TRUSOX Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from TRUsox's products provided under the TRUSOX Trademarks.

53.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the TRUSOX Trademarks without TRUsox's permission.

54.    TRUsox is the registered owner of the TRUSOX Trademarks and official source of TRUSOX Products. The United States Registrations for the TRUSOX Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of TRUsox's rights in the TRUSOX Trademarks and are willfully infringing and intentionally using counterfeits of the

TRUSOX Trademarks. Defendants' willful, intentional, and unauthorized use of the TRUSOX Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

55.    Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

56.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit TRUSOX Products.

57.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known TRUSOX Trademarks.

**SECOND CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**[Against Defendants Designated in Schedule A to the Complaint]**

58.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–50 of this Complaint.

59.    Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiffs.

60.    By using the TRUSOX Trademarks in connection with the sale of Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

61.    Defendants' conduct constitutes willful false designation of origin and

14

misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public under 15 U.S.C. §§ 1114, 1125.

62.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## THIRD CAUSE OF ACTION
### DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)
### [Against Defendants Designated in Schedule A to the Complaint]

63.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–50 of this Complaint.

64.    Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the TRUSOX Patents.

65.    For example, below is a comparison of figures from Plaintiffs' TRUSOX Patent and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

15



FIG. 1

FIG. 6

*Figures from the TRUSOX Patent*



16



*Exemplary Infringing Products sold on the Defendant Internet Stores*

66.    Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

67.    Defendants have infringed the TRUSOX Patents through the aforementioned acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

68.    Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

69.    Plaintiffs are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

**FOURTH CAUSE OF ACTION**
**UNFAIR COMPETITION (New York Common Law)**
**[Against Defendants Designated in Schedule A to the Complaint]**

70.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–50 of this Complaint.

71.    Plaintiffs have not licensed or authorized Defendants to use the TRUSOX Intellectual Property, and none of the Defendants are authorized retailers of genuine TRUSOX Products.

72.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' TRUSOX Intellectual Property.

73.    Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiffs.

74.    Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Infringing Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

75.    In fact, Defendants have fraudulently represented by their statements and actions that the Infringing Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking TRUSOX Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

18

76.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

77.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**DEMAND FOR RELIEF**

78.     Plaintiffs hereby demand judgment as follows:

a.  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i.      using the TRUSOX Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine TRUSOX Product or is not authorized by Plaintiffs to be sold in connection with the TRUSOX Trademarks;

    ii.     passing off, inducing, or enabling others to sell or pass off any product as a genuine TRUSOX Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the TRUSOX Trademarks;

19

iii.     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs.

iv.     further infringing the TRUSOX Trademarks and damaging Plaintiffs' goodwill; and

v.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs trademark, including the TRUSOX Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

b.  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.     making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, embodiment, copy or colorable imitation of the designs claimed in the TRUSOX Patent;

ii.     passing off, inducing, or enabling others to sell or pass off any product as a genuine TRUSOX Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or

20

supervision of Plaintiffs and approved by Plaintiffs for sale under the TRUSOX Patents;

iii.  further infringing the TRUSOX Patent and damaging Plaintiffs' goodwill;

iv.  aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the TRUSOX Patent; and

v.  shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe the TRUSOX Patent;

c.  Entry of an Order that the Marketplace Platforms, including without limitation Shein, Temu, Walmart, and any other online marketplace account provider, disable and cease providing services for any accounts through which Defendants are selling Infringing Products disable and cease displaying any advertisement used by or associated with Defendants in connection with their sale of Infringing Products;

d.  That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the TRUSOX Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

e.  That Plaintiffs be awarded all profits realized by Defendants from Defendants' infringement of Plaintiffs' TRUSOX Patent, pursuant to 35 U.S.C. § 289, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

f.  That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of Plaintiffs' TRUSOX Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

g.  In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the TRUSOX Trademarks; and statutory damages pursuant to 35 U.S.C. § 289 of not less than $250 for each and every use of the TRUSOX Patent;

h.  That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

i.  Award any and all other relief that this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

79.   Plaintiffs hereby demand a trial by jury.

Dated: June 1, 2026                                  Respectfully,


*/s/ Christopher Tom*
Christopher Tom, Esq.  (S.D.N.Y. Bar No. CT1983)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiffs TRUSOX LLC and JAMES PAUL CHERNESKI*