**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRUSOX LLC and JAMES PAUL CHERNESKI,

Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,

Defendants.

Case No.: 1:26-cv-04588

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. RELEVANT FACTS ..... 3

A. Plaintiffs' Intellectual Property Protects Their Successful TRUSOX Brand ..... 3

B. Defendants Are Counterfeiters of TRUSOX Products ..... 5

III. ARGUMENT ..... 10

A. This Court May Exercise Personal Jurisdiction Over Defendants ..... 12

B. Standard for Temporary Restraining Order and Preliminary Injunction ..... 14

C. Plaintiffs Will Likely Succeed on the Merits ..... 14

D. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief ..... 18

E. The Balancing of Equities Tips in Plaintiff's Favor ..... 23

F. Issuance of the Injunction Is in the Public Interest. ..... 24

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. ..... 25

A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ..... 25

B. Preventing the Fraudulent Transfer of Assets Is Appropriate. ..... 26

C. Plaintiffs Are Entitled to Expedited Discovery ..... 29

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case ..... 30

V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..... 36

VI. CONCLUSION ..... 37

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*3M Co. v. Performance Supply, LLC*,
458 F. Supp. 3d 181 (S.D.N.Y. 2020) .......... 14, 19, 23

*ABC v. DEF*,
No. 24-cv-8341 (DLC), 2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) .......... 35

*AdMarketplace, Inc. v. TeeSupport Inc. et al.*,
No. 13-cv-5635(LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) .......... 29

*Aevoe Corp. v. AE Tech Co., Ltd.*,
No. 2:12-cv-0053, 2012 WL 760692 (D. Nev. Mar. 7, 2012) .......... 22

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
No. 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) .......... 2

*Allstar Marketing Group, LLC v. Backforth Tradeltd,*
No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020) .......... 2

*Am. Girl, LLC v. Zembrka*,
118 F.4th 271 (2d Cir. 2024) .......... 13

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) .......... 27, 28

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) .......... 21

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013) .......... 20

*Balenciaga America, Inc. et al., v. Sean Dollinger et al.*,
No. 10-cv-2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) .......... 28

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*,
408 F. Supp. 3d 508 (S.D.N.Y. 2019) .......... 15

*Burger King Corp. v. Majeed*,
805 F. Supp. 994 (S.D. Fla. 1992) .......... 23

*Bushnell, Inc. v. Brunton Co.*,
673 F. Supp. 2d 1241 (D. Kan. 2009) .......... 22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) .......... 20, 24

*Cengage Learning, Inc. v. Doe 1*,
No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) .............................. passim

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ............................................................................................ 13

*CJ Products LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. Aug. 22, 2011) ................................................................ 19

*CJ Products v. Concord Toys*,
No. 10–cv–5712 (ENV)(JO), 2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) .......................... 24

*El Greco Leather Prods. Co., Inc. v. Show World*,
806 F.2d 392 (2d Cir. 1986) ............................................................................................ 19

*Envirocare Techs., LLC v. Simanovsky*,
No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443 (E.D.N.Y. June 4, 2012) ........................... 13

*Estee Lauder, Inc. v. Watsky*,
323 F. Supp. 1064 (S.D.N.Y. 1970) ................................................................................. 23

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
696 F.Supp.2d 368 (S.D.N.Y. 2010) ................................................................................ 15

*Google LLC v. Doe 1*,
No. 25-cv-10440 (JSR), 2026 WL 353660 (S.D.N.Y. Feb. 9, 2026) ........................ 30, 31, 34

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999) ......................................................................................................... 27

*Gucci America, Inc. v. Weixing Li,*
No. 10-cv-4974 (RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ................................ 28

*Guthrie Healthcare Sys. v. ContextMedia, Inc.,*
826 F.3d 27 (2d Cir. 2016) .............................................................................................. 14

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,*
219 F.3d 104 (2d Cir. 2000) ............................................................................................ 24

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
174 F.3d 411 (4th Cir. 1999) ........................................................................................... 36

*In re Vuitton et Fils*, *S.A.*,
606 F.2d 1 (2d Cir. 1979) ................................................................................................. 2

*Intersell Ventures, LLC v. 1688 Factory Direct Store Store*,
No. 25-cv-408, 2025 WL 485715 (S.D.N.Y. Feb. 11, 2025) ............................................... 35

*Kelly Toys Holdings, LLC. v. Top Dep't Store,*
No. 22-cv-558 (PAE), 2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022) ...................... 30, 32, 34

*Kipling Apparel Corp. v. Rhys,*
No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016) .................... 2, 12, 26, 37

*Klipsch Grp., Inc. v. Big Box Store Ltd.,*
No. 12-cv-6283(AJN), 2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012) ................................. 27

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
866 F. Supp. 585 (D.D.C. 1994)............................................................................................ 23

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ........................................................................................... 27, 28

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
No. 15-cv-8459 (LGS), 2016 WL 3748480 (S.D.N.Y. July 8, 2016) .................................. 13

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
No. 1:19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019)...................... 2, 11, 12, 26

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016) ............................................................................................ 20

*Mahmood v. Nielsen*,
312 F. Supp. 3d 417 (S.D.N.Y. 2018) .................................................................................. 14

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
929 F. Supp. 473 (D.D.C. 1996)............................................................................................ 23

*Mattel, Inc. v. AnimeFun Store*,
No. 18-cv-8824 (LAP), 2021 WL 765766 (S.D.N.Y. Feb. 26, 2021) ................................. 18

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,*
704 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................................................ 19, 24

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ........................................................................................... 20

*Next Phase Distrib., Inc. v. John Does 1–27*,
284 F.R.D. 165 (S.D.N.Y. 2012)........................................................................................... 29

*Nike, Inc. v. Fujian Bestwinn Indus. Co., Ltd.*,
166 F. Supp. 3d 1177 (D. Nev. 2016)............................................................................. 21, 22

*NYP Holdings v N.Y. Post Publ'g Inc.*,
63 F. Supp. 3d 328 (S.D.N.Y. 2014) ......................................................................... 19, 23, 24

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
No. 2:04-cv-0032, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007).......................................... 22

*Otter Prods., LLC v. Anke Grp. Indus. Ltd.*,
No. 2:13-cv-00029, WL 5910882 (D. Nev. Jan. 8, 2013) .............................................. 20, 22

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co., ltd*,
No. 25-cv-2732 (MMG), 2025 WL 1276618 (S.D.N.Y. Apr. 29, 2025) .............................. 35

*PCT Int'l Inc. v. Holland Elecs. LLC*,
No. CV-12-01797-PHX-JAT, 2015 WL 5210628 (D. Ariz. Sept. 8, 2015).......................... 21

*Philip Morris USA Inc. v. Felizardo*,
No. 03-cv-5891, 2004 WL 1375277 (S.D.N.Y. June 18, 2004)........................................... 18

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961) ................................................................................................ 15

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) ............................................................................................... 36

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
32 F.3d 1552 (Fed. Cir. 1994) ............................................................................................. 21

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) ......................................................................................... 27, 28

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ............................................................................................. 30

*Robert Bosch LLC v. Pylon Manufacturing Corp.,*
659 F.3d 1142 (Fed. Cir. 2011); ..................................................................................... 20, 22

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015) ................................................................................... 23

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
No. 18-cv-12069 (JPO), 2020 WL 774237 (S.D.N.Y. Feb. 18, 2020)................ 17, 18, 19, 23

*Shashi, Inc.v. Ramada Worldwide, Inc.*,
No. 7:05-cv-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005) .......................................... 24

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025) ............................................................................................... 32

*Spin Master Ltd., v. Alan Yuan's Store*,
325 F. Supp. 3d 413 (S.D.N.Y. 2018) ....................................................................... 15, 17, 18

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
No. 96-cv-7302 (RWS), 1996 WL 719381 (S.D.N.Y. Dec. 13, 1996) ................................ 15

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*,
No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021)................................... passim

*WowWee Group Ltd. v. Haoqin*,
No. 17-cv-9893, 2019 WL 1316106 (S.D.N.Y. Mar. 22, 2019)........................................... 34

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d Cir. 2012) ................................................................................................ 23

*Zuru (Singapore) Pte., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associated Identified on Schedule A Hereto*,
No. 22-cv-2483 (LGS), 2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ............................... 32

**Statutes**

15 U.S.C. § 1051 et seq........................................................................................................ 12

15 U.S.C. § 1057(b) ................................................................................................................ 16

15 U.S.C. § 1114(1) ................................................................................................................ 14

15 U.S.C. § 1116(a) ................................................................................................................ 25

15 U.S.C. § 1117(a) ............................................................................................................ 3, 27

15 U.S.C. § 1125(a) ................................................................................................................ 17

28 U.S.C. § 1331..................................................................................................................... 12

28 U.S.C. § 1338(a) ................................................................................................................ 12

28 U.S.C. § 1338(b) ................................................................................................................ 12

28 U.S.C. § 1367(a) ................................................................................................................ 12

28 U.S.C. § 1391..................................................................................................................... 12

28 U.S.C. § 1400..................................................................................................................... 12

35 U.S.C. § 1 *et seq.*.................................................................................................................. 12

35 U.S.C. § 271(a) .................................................................................................................. 17

35 U.S.C. § 283....................................................................................................................... 25

**Other Authorities**

5 *Callmann on Unfair Competition, Trademarks and Monopolies* (4th ed.) ................................ 19

5 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* (4th ed. 2013) ...................................... 28

Hague Conv., Art. 15 ........................................................................................................ 35

**Rules**

C.P.L.R. § 302(a) ...................................................................................................... 12, 13

C.P.L.R. § 6201 ........................................................................................................... 28

C.P.L.R. § 6212(a) ....................................................................................................... 28

Fed. R. Civ. P. 26(b) .................................................................................................... 29

Fed. R. Civ. P. 26(d) .................................................................................................... 29

Fed. R. Civ. P. 4(b) ...................................................................................................... 36

Fed. R. Civ. P. 4(f)(3) ............................................................................................. 30, 35

Fed. R. Civ. P. 4(k) ............................................................................................... 12, 34

Fed. R. Civ. P. 64(a) .................................................................................................... 28

Fed. R. Civ. P. 64(b) .................................................................................................... 28

Fed. R. Civ. P. 65(b) ............................................................................................. 11, 14

Fed. R. Civ. P. 65(c) .................................................................................................... 36

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. Plaintiffs TRUSOX LLC ("TRUsox") and JAMES PAUL CHERNESKI create, market, and license innovative athletic wear incorporating Plaintiffs' intellectual property (the "TRUSOX Products"). The TRUSOX Products incorporate Plaintiffs' trademarks which are covered by U.S. Trademark Registration Nos. 4,930,490; 4,930,491; 6,221,531; and 6,811,803 (the "TRUSOX Trademarks"); and Plaintiffs' patent, which is covered by Patent No. D748,391 S (the "TRUSOX Patent," together with the TRUSOX Trademarks, the "TRUSOX Intellectual Property").

Defendants have violated Plaintiffs' intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the TRUSOX Products. As the examples below and in the Complaint make clear, this is not a close case; Defendants are blatantly infringing the TRUSOX Intellectual Property and selling knock-off TRUSOX Products as if they were genuine. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores").

As is common with these sorts of ecommerce counterfeiters, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operations. Plaintiffs have filed this action to combat Defendants' infringement and counterfeiting of Plaintiffs' registered trademarks and patents, as well as to protect consumers from unknowingly purchasing counterfeit TRUSOX Products over the internet. In that regard, Plaintiffs

---

[1] The Defendants are a collection of foreign ecommerce counterfeiters, identified in Schedule A attached to the Complaint.

seek to enjoin Defendants' ongoing unlawful activities, and Plaintiffs respectfully request that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit and infringing products bearing, using, embodying, or otherwise infringing upon Plaintiffs' TRUSOX Intellectual Property (the "Infringing Products");

(2) a temporary restraint of certain Defendants' assets, described below, to preserve Plaintiffs' right to an equitable accounting;

(3) expedited discovery allowing Plaintiffs to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Infringing Products, as well as of Defendants' financial accounts;

(4) permission to effectuate service by electronic mail and electronic publication; and

(5) an order directing Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiffs' well-pleaded allegations, which are supported by the Declarations submitted in connection with this Application, make clear that such relief is necessary and proper. First, Plaintiffs have demonstrated a strong likelihood of success on the merits. Plaintiffs are the exclusive owners of the valid TRUSOX Intellectual Property and are distributors of genuine

---

[2] *See, e.g.*, *Lindsey Adelman Studio, LLC v. ZORA Lighting Co.*, No. 1:19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Mktg. Grp., LLC v. BackforthTradeltd,* 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Allstar Mktg. Grp., LLC v. 53 Romantic House Store*, 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils*, *S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

TRUSOX Products. Defendants' unauthorized use of Plaintiffs' trademarks and patent to sell Infringing Products has and continues to irreparably harm Plaintiffs by diminishing Plaintiffs' goodwill in its products, damaging Plaintiffs' reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiffs for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products, in addition to promoting general respect for trademark and patent laws. The public has a right to know what it is purchasing.

Further, a prejudgment asset freeze is also proper since Plaintiffs seek an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiffs' legitimate interests in the TRUSOX Trademarks, TRUSOX Patent, and TRUSOX Products. Accordingly, Plaintiffs respectfully request entry of their proposed order in its entirety.

## II. <u>RELEVANT FACTS</u>

### A. <u>Plaintiffs' Intellectual Property Protects Their Successful TRUSOX Brand</u>

TRUsox is an innovative U.S.-based sports apparel company that has built a strong reputation in the performance gear market since its founding in 2011. Declaration of James Paul

Cherneski (the "Cherneski Decl.") ¶ 6. Focused on enhancing athletic performance, the company specializes in high-quality grip socks and complementary sportswear designed for stability, comfort, and control. *Id.* TRUsox has achieved notable global reach and credibility. Its products are used by professional and amateur athletes worldwide, with adoption by a significant portion of elite soccer players in top-tier leagues. *Id.* This level of adoption underscores the brand's performance credibility and influence within competitive sports. *Id.*

TRUsox is distinguishable in the industry due to its patented sock design (Patent No. D748,391 S) and proprietary technology. *Id.* ¶ 7 Its patented IN/EX Technology (Patent No. 9,498,003 B2), which features traction elements on both the inside and outside of the sock, helps prevent slippage between the foot, sock, and shoe, improving agility and power transfer during movement. *Id.* This innovation has positioned the brand as a premium solution for athletes seeking measurable performance advantages. *Id.*

Since their introduction, the TRUSOX Products have been and are the subject of substantial and continuous marketing and promotion by Plaintiffs in the industry and to consumers. *Id.* ¶ 10. Plaintiffs' promotional efforts include the TRUsox website (https://tru.online), tradeshows such as ISPO and the United Soccer Coaches Convention, and marketing campaigns across the internet. *Id.* Further, Plaintiffs extensively promote the TRUSOX Products on social media such as Instagram (over 100,000 followers) and Facebook (over 17,000 followers). *Id.* Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TRUSOX Products. *Id.* As a result, the TRUSOX Products have become enormously popular, driven by Plaintiffs' arduous quality standards and innovative trademarked and patented designs. *Id.* These designs are broadly recognized by consumers as being sourced

from TRUsox. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from TRUsox and its TRUSOX Products. *Id.*

TRUsox owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the TRUSOX Trademarks as the owner of those trademarks. *Id.* ¶ 4 & Ex. 1. Plaintiffs are also the exclusive owners of all right, title, and interest in and to the TRUSOX Patent, which was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 5 & Ex. 2

### B. Defendants Are Counterfeiters of TRUSOX Products

The success of the TRUSOX Products has resulted in significant counterfeiting. Cherneski Decl. ¶ 12. Plaintiffs have identified numerous Defendant Internet Stores that sell Infringing Products from foreign countries to consumers in this Judicial District. *Id*. ¶ 16.

For example, here are some images of genuine TRUSOX Products incorporating the TRUSOX Trademark, which are marketed and sold by Plaintiff on Plaintiff's website:






*Id.* ¶ 9.

And here are images of some counterfeits sold by the Defendants:




*Id.* Ex. 3 Part 1 p. 31.




*Id.* Ex. 3 Part 9 p. 69.

Internet websites like the Defendant Internet Stores contribute to the hundreds of billions of dollars of infringing goods sold each year and pose a threat to economic growth and innovation across the world. *See* Declaration of Christopher Tom ("Tom Decl.") ¶ 2 & Ex. 1. For instance, according to intellectual-property-rights seizures-statistics report issued by U.S Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *Id.* ¶ 3 & Ex. 2.

1. Defendants Operate Legitimate-Looking Internet Stores

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TRUSOX Products. Cherneski Decl. ¶ 22. Many of the Defendant Internet Stores

look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Plaintiff has not licensed or authorized Defendants to use the TRUSOX Trademarks and TRUSOX Patent and none of the Defendants is an authorized retailer of genuine TRUSOX Products. *Id.* ¶ 20.

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also deceive unknowing consumers by using the TRUSOX Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for TRUSOX Products. Cherneski Decl. ¶ 23. Additionally, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine TRUSOX Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.*

3. Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Cherneski Decl. ¶ 24. For example, many of Defendants' listed names and physical addresses are incomplete, contain randomly typed letters, or fail to include cities or states. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious

names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 25. For example, the Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Infringing Products were manufactured by and come from common sources and that Defendants are interrelated. *Id.*

4. Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. Cherneski Decl. ¶ 26. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as marketplace platform accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *Id.* ¶ 27. Further, such counterfeiters typically maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Infringing Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants actively consort to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the TRUSOX Intellectual Property in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs intend to take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiffs' reputation and the goodwill symbolized by the TRUSOX Intellectual Property. Cherneski Decl. ¶¶ 28–32. To stop Defendants' sale of Infringing Products, Plaintiffs respectfully request that this Court issue a temporary restraining order ordering, among other things, the stop of any listings or sale of products infringing upon the TRUSOX Intellectual Property and the freezing of Defendants' assets. Without the relief requested by Plaintiffs' Application, Defendants' unlawful activity will continue unabated, and Plaintiffs and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the TRUSOX Intellectual Property via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiffs by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiffs. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the TRUSOX Intellectual Property and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang*, 2021 WL 1249631, at *2 ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio*, 2019 WL 7599931, at *2 ("Defendants may easily and quickly transfer the registrations for their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a). This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. <u>This Court May Exercise Personal Jurisdiction Over Defendants</u>

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores transacted business in New York by accepting orders of Infringing Products from and offer shipping to New York addresses located in this Judicial District. Courts in the Southern District of New York regularly exercise personal jurisdiction over websites using registered trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *Weili Fang,* 2021 WL 1249631, at *1; *BackforthTradeltd*, 2020 WL 6700503, at *1–2 (preliminary injunction order after granting TRO); *53 Romantic House Store*, 2020 WL 6700481, at *1–2 (preliminary injunction order after granting TRO); *Lindsey Adelman Studio*, 2019 WL 7599931, at *1; *Cengage Learning, Inc.*, 2018 WL 2244461, at *1; *Kipling Apparel Corp.*, 2016 WL 8814345, at *1–2. Similarly, this Court has exercised personal jurisdiction over defendants who have offered and sold counterfeit and infringing products through third-party stores on online marketplaces such as

Amazon, even though these stores have claimed they do not control their storefronts in the same manner independent websites do. *See Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016). Despite that alleged lack of control, courts can still assert jurisdiction over "internet sellers who use an internet storefront like Amazon" when such sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *Envirocare Techs., LLC v. Simanovsky*, No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443 at *3 (E.D.N.Y. June 4, 2012)).

Further, the Second Circuit recently affirmed that courts in this Judicial District could exercise personal jurisdiction over an internet store based in China that accepted orders for counterfeit dolls to be shipped to New York under C.P.L.R. § 302(a)(1), even though the orders were later cancelled and the product was never shipped into New York. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024). As that court explained, the "single act" requirement to establish personal jurisdiction in New York does not require actual shipment of a product to New York but only a transaction, even if that sale was later cancelled and refunded. *Id.* at 277–278 (clarifying that its decision in *Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158 (2d Cir. 2010) did not depend on the shipment of good but "rather on the fact that a single act can potentially suffice for establishing personal jurisdiction" in New York).

As detailed in the Complaint and in the Cherneski Decl., Plaintiffs' investigation into Defendants confirms that the Defendant Internet Stores permit Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Cherneski Decl. ¶ 16. Exhibit 3 to the Cherneski Decl. contains copies of screenshots from each Defendant Internet Store reflecting the marketing and ability to order Infringing Products to the Southern District of New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

### B. Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020) (citing *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018)). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning*, 2018 WL 2244461, at *1 (quoting Fed. R. Civ. P. 65(b)(1)).

### C. Plaintiffs Will Likely Succeed on the Merits

#### 1. Plaintiffs Are Likely Succeed on Their Trademark Infringement and Counterfeiting Claim.

Defendants are liable for trademark infringement and counterfeiting under the Lanham Act if they, "without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts analyze trademark infringement claims under the Lanham Act under a two-prong test: (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016) (citing cases); *Spin Master*

*Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 420 (S.D.N.Y. 2018); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.,* 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

"The first prong is satisfied by showing that a mark is valid and registered, owned by the registrant, and that the registrant has the exclusive right to use the mark in commerce." *Spin Master*, 325 F. Supp. 3d at 421. A valid certificate of registration of the asserted mark satisfies this standard. *BBK Tobacco & Foods*, 408 F. Supp. 3d at 520.

Once a plaintiff has established that its mark is entitled to protection, courts in this Circuit apply the eight "Polaroid factors" balancing test to determine whether the defendant's use of the mark is likely to cause confusion. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Because counterfeit marks are inherently confusing, however, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing.'" *Spin Master*, 325 F. Supp. 3d at 421 (quoting *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (citing cases)); *Topps Co. v. Gerrit J. Verburg Co.*, No. 96-cv-7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors.") (citing cases). "The sale of counterfeit goods is sufficient use to establish liability." *Spin Master*, 325 F. Supp. 3d at 422.

On the first prong, Plaintiffs' TRUSOX Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The TRUSOX Trademarks have been continuously used since 2011, and Plaintiffs have and continue to widely market and promote the TRUSOX Trademarks in the industry and to consumers.

Cherneski Decl. ¶ 10. The registrations for the TRUSOX Trademarks are valid, subsisting, and in full force and effect. *Id.* ¶ 4 & Ex. 1. Such registrations constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the TRUSOX Trademarks pursuant to 15 U.S.C. § 1057(b). Further, Plaintiffs have not licensed to or authorized Defendants to use the TRUSOX Trademarks, and none of the Defendants is an authorized retailer of genuine TRUSOX Products. *Id.* at ¶ 19.

Second, Plaintiffs have established a likelihood of confusion. The Defendants are selling Infringing Products using counterfeit marks identical to or substantially indistinguishable from the TRUSOX Trademarks, and in respect of goods identical to the genuine TRUSOX Products. Due to their long-standing use and wide acceptance by the public, the TRUSOX Trademarks have become famous and associated with high quality TRUSOX Products. The TRUSOX Trademarks are distinctive when applied to the TRUSOX Products. The marks signify to consumers that the products come from Plaintiffs and are manufactured to the highest quality standards. Because the counterfeit goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine TRUSOX Products or are sponsored or endorsed by Plaintiffs. Moreover, Defendants are intentionally using the TRUSOX Trademarks to confuse and deceive the consuming public into thinking that Defendants' Infringing Products are manufactured by or emanate from Plaintiffs. Defendants are purposefully attempting to benefit and trade off Plaintiffs' goodwill and reputation.

Plaintiffs have thus established that they have a reasonable likelihood of success on the merits for their trademark infringement and counterfeiting claim.

2. Plaintiffs Are Likely to Succeed on Their False Designation of Origin Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *Salvatore Ferragamo S.p.A. v. Does 1-56*, 18-cv-12069 (JPO), 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *Spin Master,* 325 F. Supp. 3d at 423. Because the TRUSOX Trademarks are registered marks, and Plaintiffs have established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, a likelihood of success on the merits for Plaintiffs' false designation of origin claim is also established.

3. Plaintiffs Are Likely Succeed on Their Design Patent Infringement Claim.

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, Plaintiffs are the lawful owners of all right, title, and interest in and to the TRUSOX Patent. Cherneski Decl. ¶ 5. Plaintiffs have investigated the Defendant Internet Stores and have found that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the design claimed in the TRUSOX Patent. *Id.* ¶ 18. & Ex. 3 Plaintiffs' investigation shows that an ordinary observer would be deceived into thinking that the Infringing Products are the same as Plaintiff's TRUSOX Products embodying the designs in the TRUSOX Patent. Finally, Plaintiffs have not licensed or authorized Defendants to use the TRUSOX Patent, and none of the Defendants are authorized

retailers of genuine TRUSOX Products. *Id.* ¶ 20. Accordingly, Plaintiffs are likely to establish a prima facie case of design patent infringement.

4. Plaintiffs Are Likely to Succeed on Their New York Unfair Competition Claim.

The elements of an unfair competition claim "under New York common law mirror the Lanham Act claims, except that unfair competition requires an additional showing of bad faith." *Ferragamo*, 2020 WL 774237, at *4 (internal quotations and citations omitted). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." *Spin Master*, 325 F. Supp. 3d at 424 (internal quotations and citations omitted). "'Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark.'" *Ferragamo*, 2020 WL 774237, at *4 (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03-cv-5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)); *Mattel, Inc. v. AnimeFun Store*, No. 18-cv-8824 (LAP), 2021 WL 765766, at *7 (S.D.N.Y. Feb. 26, 2021) (same); *Spin Master*, 325 F. Supp. 3d at 424 (citing cases).

Because Plaintiffs have established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, bad faith is presumed, and therefore Plaintiffs have established a likelihood of success on the merits for their New York Unfair Competition claim.

**D. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes a trademark or a patent. Here, because Defendants have made unauthorized use of the TRUSOX Intellectual Property, Plaintiffs have been irreparably harmed and will continue to be so harmed unless the Court enjoins Defendants' infringement.

In the context of trademark infringement, it is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010). When infringement leads to confusion, "the requisite irreparable harm is established as a matter of course." *N.Y.C. Triathlon*, 704 F. Supp. 2d at 325–26 (internal citations omitted). "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As such, the inability of the trademark holder to control the quality of the infringing goods sold constitutes irreparable harm, *3M Co.,* 458 F. Supp. 3d at 192, and monetary damages are likely to be inadequate compensation for such harm. *See also* 5 *Callmann on Unfair Competition, Trademarks and Monopolies* § 23B:4 (4th ed.).

Here, Defendants' unauthorized use of the TRUSOX Trademarks, along with their substantial efforts to mislead and confuse consumers, has irreparably harmed and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Cherneski Decl. ¶¶ 29–32. The extent of the harm to Plaintiffs' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237, at *5; *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (the extent of the harm to a plaintiff resulting from "[i]njecting the market with counterfeit products will not only

result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law.").

Irreparable harm resulting from design patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address."); *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024) ("Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable."). At this stage, Plaintiffs only need to show that irreparable harm is likely and causally connected to the alleged infringement. *See, e.g., Natera,* 106 F.4th at 1378; *see also Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016). Here, Plaintiffs are likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Cherneski Decl. ¶¶ 29–32. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted).

Defendants' infringement erodes and devalues Plaintiffs' rights in the TRUSOX Patent, thereby risking injury to Plaintiffs' goodwill and reputation and interfering with Plaintiffs' ability to exploit the TRUSOX Patent. *See* Cherneski Decl. ¶¶ 29–32; *See, e.g., Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining

that absent the requested TRO, plaintiff was likely to suffer "irreparable injury . . . in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents"); *see also Nike, Inc. v. Fujian Bestwinn Indus. Co*, 166 F. Supp. 3d 1177, 1178–79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

Defendants' infringement of the TRUSOX Patent by sale of the Infringing Products is likely to cause consumer confusion with genuine TRUSOX Products, resulting in harm to Plaintiffs' reputation and loss of customers' goodwill. Cherneski Decl. ¶ 31. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiffs are suffering. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the TRUSOX Patent in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23–24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple,' in the sense

that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products”).

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People’s Republic of China or Hong Kong Special Administrative Region of the People’s Republic of China, any monetary judgement is likely uncollectable. *See Robert Bosch,* 659 F.3d at 1156–57 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int’l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where “‘all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages’”). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) (“The Court’s finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient.”); *Otter Prods.*, 2013 WL 5910882, at *2 (“[B]ecause Anke has no presence in the United States, it may be difficult or impossible for OtterBox to enforce a monetary judgement against Anke.”); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263, 1265 (D. Kan. 2009) (granting preliminary injunction where “the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm”); *Nike*, 166 F. Supp. 3d, at 1179 (“[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn.”).

The extent of the harm to Plaintiffs’ reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting

an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237, at *5. For the reasons stated above, Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order and preliminary injunction are not issued. *See* Cherneski Decl. ¶¶ 29–33. As such, Plaintiffs should be granted the relief sought in this Application.

### E. <u>The Balancing of Equities Tips in Plaintiff's Favor</u>

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.,* 458 F. Supp. 3d at 197; *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) quoting *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 287 (2d Cir. 2012) ("[i]t is axiomatic that an infringer ... cannot complain about the loss of ability to offer its infringing product."). Thus, "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "'[o]ne who adopts the mark of another for similar goods acts at his own peril,' since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

Similarly, Defendants are entitled to little equitable consideration as willful patent infringers. Defendants were aware of the risks when they engaged in design patent infringement, and in such circumstances, courts refuse to assign any "harm" to a defendant. See *Celsis in Vitro*, 664 F.3d at 931 ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiffs' favor.

### F. <u>Issuance of the Injunction Is in the Public Interest.</u>

Federal courts have long held that in addition to protecting the property rights of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.") (internal citations omitted); *NYP Holdings*, 63 F. Supp. 3d at 342 (noting consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc.v. Ramada Worldwide*, *Inc.,* No. 7:05-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

Here, an injunction is in the public interest because it will stop Defendants from violating federal intellectual property law and prevent consumer confusion. Further, the public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiffs' approval and endorsement. An injunction serves the public interest in this case because "[t]rademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107–08 (2d Cir. 2000)*; see also, e.g., CJ Prods v. Concord Toys*,

No. 10–cv–5712 (ENV)(JO), 2011 WL 178610, at *6 (E.D.N.Y. Jan. 19, 2011) ("In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the TRUSOX Intellectual Property is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## IV. <u>THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.</u>

The scope of the injunctive relief sought by Plaintiffs here is appropriate both under Rule 65, as well as under the Lanham Act, which authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). The Patent Act also authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### A. <u>A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.</u>

Plaintiffs request a temporary injunction requiring Defendants to immediately cease all use of the TRUSOX Intellectual Property on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the TRUSOX Intellectual Property and associated

goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the TRUSOX Intellectual Property.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiffs are currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931; *Cengage Learning,* 2018 WL 2244461*;* *Kipling Apparel Corp.,* 2016 WL 8814345 (S.D.N.Y. Feb. 12, 2016).

**B. Preventing the Fraudulent Transfer of Assets Is Appropriate.**

Plaintiffs also request an *ex parte* restraint of Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Plaintiffs have good cause to suspect the Defendants are residents of China or Hong Kong. *See* Declaration of Yingchun Hou ("Hou Decl.") Ex. 1, Cherneski Decl. Ex. 3. In Plaintiffs' counsel's experience, foreign merchants selling counterfeit products will operate multiple credit card and third-party payment processing accounts, so they continue operating in spite of efforts to prevent their illegal actions. Cherneski Decl. ¶ 27. Further, counterfeiters such as Defendants will typically maintain offshore bank accounts and will move from their third-party payment processing accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.* Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, the Lanham Act provides that Plaintiffs are entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiffs' Complaint seeks, among other relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 12-cv-6283(AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiffs' request for a prejudgment asset freeze to preserve the relief sought by Plaintiffs.

This District previously entered an asset restraining order in a trademark infringement case brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning,* 2018 WL 2244461, at *3–4. The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 329–33 (1999)); *see also Gucci America, Inc. v. Weixing Li,* No. 10-cv-4974 (RJS), 2011 WL

6156936, at *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same); *see also Balenciaga America, Inc. et al., v. Dollinger et al.,* No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010). Because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets. *Cengage Learning,* 2018 WL 2244461, at *3–4.; *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question here were the profits the [defendants] made by unlawfully stealing [plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025).

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.[3]

---

[3] Alternatively, the Court may grant a pre-judgment attachment of Defendants' domestic assets under Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a). Rule 64 authorizes"[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The rule specifically mentions attachment as an available remedy. Fed. R. Civ. P. 64(b). And the C.P.L.R. permits attachment upon a showing "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. § 6212(a). Here, Plaintiff will succeed on the merits for the reasons given above, and attachment is appropriate for either of at least two reasons. First, C.P.L.R. § 6201(1) authorizes attachment if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." And second, C.P.L.R. § 6201(3) permits attachment if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, the Defendants appear to be foreign entities, and there is a substantial risk

### C. Plaintiffs Are Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1–27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage Learning*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib*., 284 F.R.D. at 171.) (internal quotations omitted). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support Inc.,* No. 13-cv-5635(LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order.

Plaintiffs respectfully request expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide

---

that they will remove assets outside of the jurisdiction absent injunctive relief or attachment.

expedited discovery in this action. As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiffs' seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

### D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs request authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, the papers supporting this Application, and any other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "Link"). Plaintiffs submit that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement. *See Google LLC v. Doe 1*, No. 25-cv-10440 (JSR), 2026 WL 353660, at *2 (S.D.N.Y. Feb. 9, 2026); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). This Court has held that service through email and website publication is "reasonably calculated, under all the circumstances, to apprise [defendants] of the pendency of the action." *Google LLC*, 2026 WL 353660, at *2 (quoting *Kelly Toys Holdings, LLC. v. Top Dep't Store,* No. 22-cv-558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022)). Further, the Ninth Circuit in *Rio Properties* held, "[w]ithout hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." 284 F.3d at 1017. The Court reached

this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id*

Likewise, in Plaintiffs' counsel's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to Shein, Temu, Walmart, and other third-party payment processers to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from Shein, Temu, and Walmart is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of Infringing Products. *See* Cherneski Decl., ¶ 21. Indeed, Defendants appear to rely primarily on electronic communications to communicate with their customers, demonstrating the reliability of this method of communication by which the Defendants may be apprised of the pendency of this action. Authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

1. <u>Defendants' Addresses for Service Are Not Known.</u>

Plaintiffs have good cause to suspect the Defendants are residents of China and Hong Kong. *See* Hou Decl. Ex.1; Cherneski Decl. Ex. 3. The United States, the People's Republic of China, and the Hong Kong Special Administrative Region of the People's Republic of China are all signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "<u>Hague Convention</u>"). *See* Tom Decl. ¶ 4. However, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." Tom Decl. ¶ 4 and Ex. 3; *see also Google LLC*, 2026 WL 353660, at *1 (finding plaintiff was not bound by Hague

Convention after it made reasonable efforts to locate defendants and could serve defendants via electronic methods after *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025); *Kelly Toys Holdings*, 2022 WL 3701216, at *9 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants); *Zuru (Singapore) Pte., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associated Identified on Schedule A Hereto*, No. 22-cv-2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (finding electronic service was proper under Rule 4(f)(3) when defendants did not provide accurate physical addresses); *Cengage Learning*, 2018 WL 2244461, at *4–5 (same).

In this case, Plaintiffs, through their representatives, investigated the feasibility of effecting service of physical documents on the 73 Defendants utilizing the Shein, Temu, or Walmart marketplace platforms. Specifically, Plaintiffs and their representatives have utilized a specialized investigative firm, Panoramic Consulting Ltd. ("Panoramic"), with over 15 years of experience researching online merchants in China and Hong Kong. Hou Decl. ¶¶ 3–4. Panoramic conducted a multi-layered inquiry into each Defendant's purported physical address and contact information as listed on their seller/store profile pages or invoices. *Id.* ¶ 5. The Panoramic investigators performed comprehensive searches using multiple independent data sources, including Tianyancha, a major platform aggregating Chinese government registration data and corporate records, and Baidu.com, China's leading and largest search engine and mapping systems, which compiles business information from authoritative national databases. *Id.* ¶¶ 6–7.

In addition to researching the listed addresses of these Defendants, Panoramic researched and attempted to identify each store's registered telephone number. *Id.* ¶ 8. In some instances, Panoramic contacted the phone numbers listed on the Defendants' home page, or where a number

was not listed, the telephone number identified through additional research tied to the listed physical addresses. *Id*. Panoramic attempted to contact these Defendants at their listed telephone numbers because businesses in China and Hong Kong that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in China and Hong Kong will require a working phone number to ensure their service attempt can be completed. *Id.* ¶ 18. Similarly, it is very difficult to confirm the address for any business that does not provide or confirm its telephone numbers, since mailing services in China and Hong Kong will be unable to confirm or verify the listed address without a telephone number. *Id.*

Based on Panoramic's investigation and extensive efforts to confirm the addresses of these defendants, none of the defendants utilizing the Shein, Temu or Walmart platforms have listed locations that can be verified and thus used to serve defendants at their listed location. *Id.* ¶¶ 10–11, 19. In particular, many of these Defendants listed telephone numbers that appear to have no relation to their business and suggest that their registered information is false, while other Defendants refused to provide any information about their location or their business—suggesting that these businesses will seek to avoid service efforts. *Id.* ¶ 13–15.

Because Defendants provide incomplete or inaccurate information about their location and contact information, their locations are not known, and Plaintiffs will not be able to notify the Defendants of this action or serve them without using alternative methods of service. Absent the ability to serve Defendants in this manner, Plaintiffs will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have listed incorrect names and physical address information precisely for the purpose of concealing their locations and avoiding liability for their unlawful conduct. *See* Cherneski Decl. ¶ 24.

A number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props*, 284 F.3d at 1018; s*ee also Google LLC*, 2026 WL 353660, at *1–2; (permitting alternative service by electronic means as part of a preliminary injunction); *Cengage Learning,* 2018 WL 2244461, at *5 (finding email service appropriate on defendants who provided no true names or physical addresses and thus were not known)); *Kelly Toys*, 2022 WL 3701216, at *9–10 (affirming electronic service on online retailers who hid their location and instead provided false addresses). As such, federal courts, including in this District, have permitted alternative service of process in matters involving counterfeiting and trademark infringement. *See WowWee Grp. Ltd. v. Haoqin*, No. 17-cv-9893, 2019 WL 1316106, at *2 (S.D.N.Y. Mar. 22, 2019) (upholding electronic service on online merchants who were "anonymous individuals or businesses . . . that traffic in counterfeit goods" and whose identities consist of "only a username and corresponding email address"); *Cengage Learning,* 2018 WL 2244461, at *5 (permitting service by e-mail on foreign defendants where defendants did not provide true legal names or physical addresses on their online storefronts).

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15. As the Ninth Circuit explained in *Rio Properties*, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is

rather one means among several by which an international defendant may be served. *Id.* at 1015. As such, this Court may allow Plaintiffs to serve the Defendants via electronic publication and/or e-mail.

2. Defendants' Infringements of Plaintiffs' Intellectual Property Create Exigent Circumstance for Service

Further, the nature of Plaintiffs' claims—that anonymous online merchants are actively infringing upon their intellectual property—present exigent circumstances that justify alternative service of certain filings and orders upon the infringing defendants. Article 15 of the Hague Convention expressly permits a judge to order "in case of urgency, any provisional or protective measures," Hague Convention, Art. 15. The 1993 Advisory Committee Notes to Rule 4 expressly acknowledge that the Hague Convention does authorize "special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstance" and that "[i]n such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement." Fed. R. Civ. P. 4. Accordingly, in similar cases involving counterfeiting by foreign merchants operating online stores, courts in this District have acknowledged the need for timely service and have permitted electronic service of certain documents and orders under Rule 4(f)(3). *See ABC v. DEF*, No. 24-cv-8341 (DLC), 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (acknowledging that ongoing counterfeit activity creates exigencies that justify e-mail service of temporary restraining order and related orders); *Intersell Ventures, LLC v. 1688 Factory Direct Store Store*, No. 25-cv-408, 2025 WL 485715, at *6 (S.D.N.Y. Feb. 11, 2025) (stating exigencies of online counterfeiting justified temporary restraining order permitting electronic service of order and related documents on all defendants); *Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*, No. 25-cv-2732 (MMG), 2025 WL 1276618, at *3 (S.D.N.Y. Apr. 29, 2025) (granting temporary restraining

order against online merchants defendants and permitting electronic service of order on those defendants).

The proposed Temporary Restraining Order provides for issuance of a single original summons[4] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).

In summary, Plaintiffs respectfully submit that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to appraise Defendants of the pendency of the action and afford them the opportunity to present their objections, if any. Plaintiffs, therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

## V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiffs submit that a bond in such amount is fair and reasonable under the circumstances and is consistent with the bond amounts required by courts in similar cases. See,

[4] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) state, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

e.g., Kipling Apparel Corp., 2016 WL 8814345, at *3 ($5,000 bond); Cengage Learning, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *7 ($1,000 bond).

## VI. CONCLUSION

Plaintiffs' business, their TRUSOX brand, and consumers are being irreparably harmed by online counterfeiters. Without entry of the requested relief, the sale of Infringing Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiffs. Therefore, entry of an *ex parte* order is necessary to protect Plaintiffs' trademark and patent rights, to prevent further harm to Plaintiffs and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order in the form proposed and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiffs intend to present a motion for preliminary injunction.

Dated: June 1, 2026

Respectfully,

*/s/ Christopher Tom*

Christopher Tom, Esq. (S.D.N.Y. Bar No. CT1983)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiffs TRUSOX LLC and JAMES PAUL CHERNESKI*